IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| WAYNE BIDDLE, | : |
| Plaintiff, | : |
| v. | : Civ. No. 13-343-RGA |
| PHILLIP MORGAN, et al., | : |
| Defendants. | : |

Wayne Biddle, Sussex Community Correctional Center, Georgetown, Delaware, Pro Se Plaintiff.

**MEMORANDUM OPINION**

May 14, 2013
Wilmington, Delaware

*[signature]*

**ANDREWS, U.S. District Judge:**

Plaintiff Wayne Biddle, an inmate at the Sussex Community Correctional Center, Georgetown, Delaware, filed this action pursuant to 42 U.S.C. § 1983. He appears *pro se* and has been granted leave to proceed *in forma pauperis* (D.I. 4, 6). The Court proceeds to review and screen the Complaint pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(a).

According to the Complaint (D.I. 2), on May 15, 2012, Plaintiff suffered a grand mal seizure while he was housed at the Howard R. Young Correctional Institution in Wilmington, Delaware. At the time, Plaintiff was in the infirmary. He alleges that Defendants Correctional Officers Jones and White confronted him and, when he did not respond, maced him and called a "Code 1, Office in Distress." Jones and White knocked Plaintiff to the ground and punched and kicked him. Another code was called for Defendant Quick Response Team to respond. The team members punched, kicked, hit, and maced Plaintiff.

During this time, a male nurse on duty told the officers several times that Plaintiff was not fighting, but was having a seizure. Apparently Plaintiff went into cardiac arrest and was "hooked up to a heart [defibrillator] to jump start [his] heart." Plaintiff was transported by ambulance to St. Francis Hospital and admitted to the intensive care cardiac care unit. Plaintiff was released from the hospital on May 20, 2012 and returned to the Howard R. Young Correctional Institution. Plaintiff seeks compensatory damages. In addition, he asks that criminal charges be brought against those involved Because Plaintiff proceeds *pro se*, his pleading is liberally construed and his Complaint, "however inartfully pleaded, must be held to less stringent standards than formal

pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks omitted).

This Court must dismiss, at the earliest practicable time, certain *in forma pauperis* and prisoner actions that are frivolous, malicious, fail to state a claim, or seek monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2) (in forma pauperis actions); 28 U.S.C. § 1915A (actions in which prisoner seeks redress from a governmental defendant); 42 U.S.C. § 1997e (prisoner actions brought with respect to prison conditions). The Court must accept all factual allegations in a complaint as true and take them in the light most favorable to a *pro se* plaintiff. *See Phillips v. County of Allegheny*, 515 F.3d 224, 229 (3d Cir. 2008). An action is frivolous if it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Under 28 U.S.C. § 1915(e)(2)(B)(i) and § 1915A(b)(1), a court may dismiss a complaint as frivolous if it is "based on an indisputably meritless legal theory" or a "clearly baseless" or "fantastic or delusional" factual scenario. *Neitzke*, 490 U.S. at 327-28.

The legal standard for dismissing a complaint for failure to state a claim pursuant to § 1915(e)(2)(B)(ii) and § 1915A(b)(1) is identical to the legal standard used when ruling on Rule 12(b)(6) motions. *See Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999). However, before dismissing a complaint or claims for failure to state a claim upon which relief may be granted pursuant to the screening provisions of 28 U.S.C.

2

§§ 1915 and 1915A, the Court must grant Plaintiff leave to amend his Complaint, unless amendment would be inequitable or futile. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002).

A well-pleaded complaint must contain more than mere labels and conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). The assumption of truth is inapplicable to legal conclusions or to "[t]hreadbare recitals of the elements of a cause of action supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678. When determining whether dismissal is appropriate, the Court conducts a two-part analysis. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). First, the factual and legal elements of a claim are separated. *Id.* The Court must accept all of the Complaint's well-pleaded facts as true, but may disregard any legal conclusions. *Id.* at 210-11.

Second, the Court must determine whether the facts alleged in the Complaint are sufficient to show that the plaintiff has a "plausible claim for relief." *Fowler*, 578 F.3d at 211. In other words, the Complaint must do more than allege the plaintiff's entitlement to relief; rather, it must "show" such an entitlement with its facts. *Id.* A claim is facially plausible when its factual content allows the Court to draw a reasonable inference that the defendant is liable for the misconduct alleged. *See Iqbal*, 556 U.S. at 678. The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 570).

3

Plaintiff names Defendants Quick Response Team and Internal Affairs HRYCI. To state a viable § 1983 claim, a plaintiff must allege facts showing a deprivation of a constitutional right, privilege or immunity by a person acting under color of state law. *See Daniels v. Williams*, 474 U.S. 327, 330 (1986). The claims against the Quick Response Team and Internal Affairs are barred by *Will v. Michigan Department of State Police*, 491 U.S. 58, 69 (1989), which holds that neither states nor state officials sued in their official capacities for money damages are "persons" within the meaning of § 1983. *See Evancho v. Fisher*, 423 F.3d 347, 350 (3d Cir. 2005). The Quick Response Team and Internal Affairs HRYCI are not persons within the meaning of § 1983. Accordingly, the claims against them will be dismissed as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and § 1915A(b)(1).

In addition, it appears that Plaintiff sues a number of Defendants based upon their supervisory positions, but there are no allegations directed towards them. The Complaint also names several non-supervisory individuals but, again, there are no allegations directed towards them. A civil rights complaint must state the conduct, time, place, and persons responsible for the alleged civil rights violations. *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005). In addition, the Third Circuit has reiterated that a § 1983 claim cannot be premised upon a theory of respondeat superior and, that in order to establish liability for deprivation of a constitutional right, a party must show personal involvement by each defendant. *See Brito v. United States Dep't of Justice*, 392 F. App'x 11, 14 (3d Cir. 2010).

"Because vicarious liability is inapplicable to § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. In *Iqbal*, the Supreme Court emphasized that "[i]n a § 1983 suit - here masters do not answer for the torts of their servants - the term 'supervisory liability' is a misnomer. Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Iqbal*, 556 U.S. at 677. "Thus, when a plaintiff sues an official under § 1983 for conduct 'arising from his or her superintendent responsibilities,' the plaintiff must plausibly plead and eventually prove not only that the official's subordinates violated the Constitution, but that the official by virtue of his own conduct and state of mind did so as well." *Dodds v. Richardson*, 614 F.3d 1185, 1198 (10th Cir. 2010). The factors necessary to establish a § 1983 violation will vary with the constitutional provision at issue. *Id.*

Under pre-*Iqbal* Third Circuit precedent, "[t]here are two theories of supervisory liability," one under which supervisors can be liable if they "established and maintained a policy, practice or custom which directly caused [the] constitutional harm," and another under which they can be liable if they "participated in violating plaintiff's rights, directed others to violate them, or, as the person[s] in charge, had knowledge of and acquiesced in [their] subordinates' violations." *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (as quoted in *Santiago v. Warminster Twp.*, 629 F.3d 121, 129 n.5 (3d Cir. 2010)). "Particularly after *Iqbal*, the connection between the supervisor's directions and the constitutional deprivation must

be sufficient to demonstrate a plausible nexus or affirmative link between the [directions] and the specific deprivation of constitutional rights at issue." *Id.* at 130 (internal quotation marks omitted). The Third Circuit has recognized the potential effect that *Iqbal* might have in altering the standard for supervisory liability in a § 1983 suit but, to date, has declined to decide whether *Iqbal* requires narrowing of the scope of the test. *Id.* at 130 n.8; *see, e.g.*, *Argueta v. United States Immigration and Customs Enforcement*, 643 F.3d 60, 70 (3d Cir. 2011) ("To date, we have refrained from answering the question of whether *Iqbal* eliminated – or at least narrowed the scope of – supervisory liability because it was ultimately unnecessary to do so in order to dispose of the appeal then before us.").

Facts showing personal involvement of the defendant must be asserted; such assertions may be made through allegations of specific facts showing that a defendant expressly directed the deprivation of a plaintiff's constitutional rights or created such policies where the subordinates had no discretion in applying the policies in a fashion other than the one which actually produced the alleged deprivation; *e.g.*, supervisory liability may attach if the plaintiff asserts facts showing that the supervisor's actions were "the moving force" behind the harm suffered by the plaintiff. *See Sample v. Diecks*, 885 F.2d 1099, 1117-18 (3d Cir. 1989).

Plaintiff provides no specific facts how any defendant, other than Jones and White, allegedly violated his constitutional rights. There are no allegations regarding the personal involvement of any of the remaining defendants or that the supervisory defendants expressly directed the deprivation of Plaintiff's constitutional rights, or that

6

they created policies wherein subordinates had no discretion in applying them in a fashion other than the one which actually produced the alleged deprivation. Accordingly, the Court will dismiss the claims against Warden Phillip Morgan, Deputy Warden Emig Smith, Officer Burrell, Officer Williams, Sgt. Williams, Lt. Williams, Security Chief Major Parker, Officer Smith, and Ronald Drake for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and § 1915A(b)(1).

It appears plausible that Plaintiff may be able to articulate a claim against the defendants (or name alternative defendants). In addition, it may be that Plaintiff may be able to state a claim against the individual members of the Quick Response Team and Internal Affairs HRYCI. Therefore, Plaintiff will be given an opportunity to amend his pleading. See *O'Dell v. United States Gov't*, 256 F. App'x 444 (3d Cir. 2007).

Plaintiff has alleged what appears to be cognizable excessive force claims against Correctional Officer Jones and Correctional Officer White and will be allowed to proceed against Jones and White.

An appropriate order will be entered.