IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

WAYNE BIDDLE,

                Plaintiff;

v.

SECURITY CHIEF PHILIP D. PARKER,
WARDEN PHILIP MORGAN, JOHN
WATTS, TIMOTHY LOUISIGNAU,
THOMAS ROMANOWSKI, KING AYALA,
CHRISTOPHER THOMAS, AARON
TREHERNE, MATTHEW KREUTZ, KELLI
PAIGE, AND CORRECT CARE
SOLUTIONS, LLC,

                Defendants.

Civil Action No. 13-343-RGA

## MEMORANDUM OPINION

Frederick L. Cottrell, III, Esq. (argued), Katherine C. Lester, Esq. (argued), Arun J. Mahon, Esq., RICHARDS, LAYTON & FINGER, Wilmington, DE.

Attorneys for Plaintiff Wayne Biddle.

Joseph C. Handlon, Esq. (argued), Deputy Attorney General, STATE OF DELAWARE DEPARTMENT OF JUSTICE, Wilmington, DE.

Attorney for Supervisor Defendants.

Daniel A. Griffith, Esq. (argued), Scott G. Wilcox, Esq., Kaan Ekiner, Esq., WHITEFORD TAYLOR & PRESTON LLP, Wilmington, DE.

Attorneys for Defendant Correct Care Solutions, LLC.

September 4, 2015

*signature* 
**ANDREWS, U.S. DISTRICT JUDGE:**

Before the Court is Security Chief Philip Parker, Former Warden Philip Morgan, and Corporal John Watts's (collectively, "Supervisor Defendants") motion to dismiss Counts III and IV of Plaintiff's complaint. (D.I. 85). Also before the Court is Correct Care Solutions, LLC's ("CCS") motion to dismiss Counts V, VI, and VII of Plaintiff's complaint. (D.I. 87). Both motions have been fully briefed. (D.I. 86, 88, 93, 98, 102 & 109). The Court held oral argument on May 13, 2015. (D.I. 138).[1] The parties also submitted supplemental letter briefs in response to Plaintiff's second amended complaint. (D.I. 145, 147, 149 & 153). For the reasons provided below, Supervisor Defendants' motion to dismiss Counts III and IV and CCS's motion to dismiss Counts V, VI, and VII of the complaint are granted.

## I. BACKGROUND

The present case arises out of an incident occurring at the Howard R. Young Correctional Institution ("HRYCI") on May 16, 2012. (D.I. 140 ¶ 1). Plaintiff filed his original *pro se* complaint on March 1, 2013. (D.I. 2). The Court gave Plaintiff leave to file an amended complaint on May 14, 2013. (D.I. 10). Plaintiff filed an amended *pro se* complaint on June 5, 2013. (D.I. 17). On July 9, 2014, the Court granted Plaintiff's request for counsel. (D.I. 52). The Court entered an order recognizing Plaintiff's counsel on September 19, 2014. (D.I. 56). Plaintiff's counsel entered an appearance on September 23, 2014. (D.I. 57). Plaintiff filed a first amended complaint on January 30, 2015, which named CCS as a defendant for the first

---

[1] Plaintiff filed a notice of subsequent authority on June 4, 2015 (D.I. 141), informing the Court of the Supreme Court's decision in *Taylor v. Barkes*, 135 S. Ct. 2042, 2045 (2015) (per curiam), which reversed the Third Circuit's decision in *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 332 (3d Cir. 2014). Plaintiff filed another notice of subsequent authority on June 30, 2015, informing the Court of the Supreme Court's decision in *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2477 (2015).

1

time. (D.I. 81). Following oral argument, Plaintiff filed a second amended complaint on June 3, 2015.[2] (D.I. 140).

## II. Legal Standard

When reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must accept the complaint's factual allegations as true. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007). Rule 8(a) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." *Id.* at 555. The factual allegations do not have to be detailed, but they must provide more than labels, conclusions, or a "formulaic recitation" of the claim elements. *Id.* ("Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."). Moreover, there must be sufficient factual matter to state a facially plausible claim to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The facial plausibility standard is satisfied when the complaint's factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." (internal quotation marks omitted)).

## III. DISCUSSION

### A. Supervisor Defendants

Supervisor Defendants argue that they are entitled to qualified immunity with respect to Counts III and IV. (D.I. 86 at 16). "Qualified immunity shields government officials from

---

[2] Plaintiff's "second amended complaint" (D.I. 140) is herein referred to as the "complaint."

civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Taylor v. Barkes*, 135 S. Ct. 2042, 2044 (2015) (per curiam). "To be clearly established, a right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Id.* (quoting *Reichle v. Howards*, 132 S. Ct. 2088, 2093 (2012)). "When properly applied, [qualified immunity] protects all but the plainly incompetent or those who knowingly violate the law." *Id.* (alteration in original). "We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2085 (2011). The Supreme Court has instructed courts "not to define clearly established law at a high level of generality." *City & Cnty. of San Francisco, Calif. v. Sheehan*, 135 S. Ct. 1765, 1776 (2015).

Plaintiff relied heavily on the Third Circuit's decision in *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307 (3d Cir. 2014) to support his supervisory claims. During oral argument, Plaintiff referred to *Barkes* as the best case in support of his position. (D.I. 138 at 25:25–26:5). The Supreme Court, however, recently reversed the Third Circuit's decision in *Barkes* on the ground of qualified immunity. *See Taylor*, 135 S. Ct. at 2045.[3] In *Taylor*, the Supreme Court addressed a § 1983 claim against the commissioner of the Delaware Department of Correction and the warden of HRYCI for failing to prevent an inmate's suicide by "failing to supervise and monitor the private contractor that provided the medical treatment." *Id.* at 2043. The Supreme Court held that "an incarcerated person's right to the proper implementation of adequate suicide prevention protocols" was not a clearly established right at the time of the inmate's death. *Id.* at

---

[3] The Supreme Court did not address the Third Circuit's supervisory liability decision. *Taylor*, 135 S. Ct. at 2043.

3

2044. The Supreme Court stated that "[n]o decision of this Court establishes a right to the proper implementation of adequate suicide prevention protocols," and that no Supreme Court decision "even discusses suicide screening or prevention protocols." *Id.* Further, the Supreme Court stated that, at the time of the inmate's death, there was not a "robust consensus of cases of persuasive authority." *Id.* Thus, the Supreme Court found that "even if [HRYCI's] suicide screening and prevention measures contained the shortcomings that respondents allege, no precedent on the books [at the time of the inmate's death] would have made clear to petitioners that they were overseeing a system that violated the Constitution." *Id.* at 2045. Therefore, the Supreme Court held that the commissioner and the warden were not violating a clearly established law and were entitled to qualified immunity with respect to the supervisory claim against them. *Id.* The Supreme Court's *Taylor* decision addresses an issue almost identical to the one presently before the Court.[4]

Plaintiff argues that Supervisor Defendants violated the clearly established right "of a person suffering [from] a known medical condition to be free from excessive force." (D.I. 147 at 1). During oral argument, Plaintiff also characterized his constitutional right as "the right to have appropriate protocols in place to handle someone having a seizure." (D.I. 138 at 27:16–28:8). I find the latter characterization better defines the constitutional right at issue in Counts III and IV. According to the complaint, Mr. Morgan and Mr. Parker "were responsible for making sure that officers received adequate training and overseeing all officers at the prison" and

---

[4] Supervisor Defendants also cite the Supreme Court's recent decision in *City & Cnty. of San Francisco, Calif. v. Sheehan*, holding that two police officers were entitled to qualified immunity from excessive force claims arising from an incident where the officers shot a person suffering from mental illness after the person had threatened them with a knife. 135 S. Ct. 1765, 1775 (2015). Plaintiff cites the Supreme Court's recent decision in *Kingsley v. Hendrickson*, holding that "a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable." 135 S. Ct. 2466, 2473 (2015). Both of these cases, however, address claims against officers, not supervisors. Thus, neither case is on point for the purpose of this motion.

"for enacting and monitoring the policies that existed regarding treatment of inmates." (D.I. 140 ¶¶ 153 & 167). Mr. Watts, in his capacity as supervisor, "was responsible for overseeing the members of the PQRT and making sure they received adequate training and supervision" and "for monitoring the policies that existed regarding the treatment of inmates by subordinate officers."[5] (*Id.* ¶¶ 154 & 168). Based on these responsibilities, Count III alleges that Supervisor Defendants "failed to adequately train, supervise, and monitor the activities of their subordinates in a manner sufficient to ensure the proper responses to inmates with medical emergencies, such as epileptic seizures." (*Id.* ¶ 155). Count IV alleges that Supervisor Defendants "were aware that the DOC and/or HRYCI had inadequate policies in place to address the response of correctional officers to inmates experiencing seizure episodes." (*Id.* ¶ 170).

Similar to the claim at issue in *Taylor*, Counts III and IV assert Plaintiff's right to the proper implementation of training, supervision, and policies for handling individuals who suffer from seizures. As of May 16, 2012—the date of the challenged conduct—there was no Supreme Court decision establishing such a right. Further, there was not a "robust consensus of cases of persuasive authority" suggesting that such a right existed. Plaintiff fails to cite a single case suggesting the existence of an inmate's right to the implementation of adequate training and policies for handling inmates with seizures.[6] (D.I. 147 at 2). As the Supreme Court held in *Taylor*, even if HRYCI's training and policies regarding seizures were as deficient as Counts III

---

[5] The complaint alleges that Mr. Watts was directly involved in the May 16, 2012 incident as well. (D.I. 140 ¶¶ 153–54).

[6] Plaintiff cites the following cases: "*Pritzker v. City of Hudson*, 26 F. Supp. 2d 433, 444 (N.D.N.Y. 1998) (denying qualified immunity to officers that applied restraints to a pre-trial detainee with injured wrists because restraining 'a non-threatening individual in the face of a known medical condition violates clearly established constitutional rights'); *Walton v. City of Southfield*, 995 F.2d 1331, 1342 (6th Cir. 1993) (denying qualified immunity to an officer that restrained an arrestee with an injured shoulder); *Howard v. Dickerson*, 34 F.3d 978, 981 (10th Cir. 1994) (denying qualified immunity to an officer that restrained an arrestee with a neck injury)." (D.I. 147 at 2).

and IV allege, there was no precedent in May 2012 that would have made clear to Supervisor Defendants "that they were overseeing a system that violated the Constitution." *Taylor*, 135 S. Ct. at 2045. Thus, Counts III and IV do not allege a "statutory or constitutional right that was clearly established at the time of the challenged conduct." Therefore, Supervisor Defendants are entitled to qualified immunity with respect to Counts III and IV. This decision does not impact any other claims asserted against Mr. Watts.

### B. CCS

CCS argues that Counts V, VI, and VII of the complaint are barred under Delaware's two-year statute of limitations for personal injury actions. (D.I. 88 at 5). "Although federal law provides no statute of limitations for actions brought under § 1983, state law may provide a limitations period 'if it is not inconsistent with federal law or policy to do so.'" *Tearpock-Martini v. Borough of Shickshinny*, 756 F.3d 232, 235 (3d Cir. 2014). "A section 1983 claim is characterized as a personal-injury claim and thus is governed by the applicable state's statute of limitations for personal-injury claims." *Dique v. N.J. State Police*, 603 F.3d 181, 185 (3d Cir. 2010). "Because Delaware's statute of limitations for personal injury claims is two years, Plaintiff's Section 1983 claims are subject to a two-year statute of limitations." *Lamb-Bowman v. Del. State Univ.*, 1999 WL 1250889, at *8 (D. Del. Dec. 10, 1999) (citing 10 Del. C. § 8119). "The date of the claim's accrual, however, continues to be governed by federal law, although state law generally governs tolling and its effects." *Tearpock-Martini*, 756 F.3d at 235. "A section 1983 claim accrues when the plaintiff knows or has reason to know of the injury that forms the basis of his cause of action." *Carr v. Town of Dewey Beach*, 730 F. Supp. 591, 603 (D. Del. 1990) (citing *Deary v. Three Un-named Police Officers*, 746 F.2d 185, 197 n.16 (3d Cir. 1984)).

Plaintiff's cause of action arises out of an incident that occurred on May 16, 2012, which is when the two-year limitations period began to run. (D.I. 140 ¶ 1). The amended complaint naming CCS as a defendant was filed on January 30, 2015—well outside the two-year limitations period. (D.I. 81). Plaintiff argues, however, that the May 2012 incident was part of a series of conduct by CCS that constituted a "continuing violation" of Plaintiff's constitutional rights. (D.I. 98 at 10). "Under the continuing violation doctrine, a plaintiff can pursue his Section 1983 claims based on conduct that began prior to the limitations period, if the plaintiff can show that the conduct is part of an ongoing practice." *Eaton v. Corr. Med. Sys., Inc.*, 2007 WL 2727154, at *2 (D. Del. Sept. 17, 2007). "To determine whether the continuing violations doctrine can be applied, the Court must consider: (1) whether the complaint alleges any violations within the limitations period, and (2) whether the conduct is reasonably related to conduct that occurred within the limitations period." *Id.* (citing *West v. Phila. Elec. Co.*, 45 F.3d 744, 754–55 (3d Cir. 1995)). "To establish the second prong of this test, a plaintiff must demonstrate that the action is not an isolated occurrence, but part of a consistent, on-going pattern." *Id.* (citing *West*, 45 F.3d at 755 ("The relevant distinction is between the occurrence of isolated, intermittent acts of discrimination and a persistent, on-going pattern.")).

Counts V, VI, and VII allege that CCS failed to provide adequate medical treatment, training, and policies, and thus contributed to the May 16, 2012 incident and Plaintiff's resulting injuries. (D.I. 140 ¶¶ 180–223). The complaint alleges three additional incidents that occurred within the two-year limitations period that amounted to "continuing mistreatment." (*Id.* ¶¶ 92–97). On July 14, 2012, Plaintiff filled out a "Sick Call Form," stating that he needed snacks after dinner in order to take his seizure medication. (*Id.* ¶ 94). On November 2, 2013, Plaintiff completed a "Medical Grievance" form, claiming that he was not receiving his medication and

7

that he was afraid he would have a seizure. (*Id.* ¶ 95). On July 27, 2014, Plaintiff had a seizure in the "chow hall" and officers tackled him to the floor, handcuffed him, and one officer shoved a foot in his face. (*Id.* ¶ 96).

The July 2014 incident is not relevant to the claims against CCS because it occurred after CCS's contract with the Delaware Department of Corrections (DOC) ended on June 30, 2014. (D.I. 166 at 2). Thus, the only issue is whether the July 2012 and November 2013 incidents are "reasonably related" to the May 2012 incident. I find they are not. The claims against CCS arise from the use of excessive force on Plaintiff while he was having a seizure. The July 2012 and November 2013 incidents were grievances filed by Plaintiff about his seizure medication. Even assuming that CCS ignored these grievances, neither incident involved the use of excessive force on Plaintiff while he was having a seizure. The July 2012 and November 2013 incidents are "isolated, intermittent acts" that do not amount to a "persistent, on-going pattern." Thus, the July 2012 and November 2013 incidents are not reasonably related to the May 2012 incident. Therefore, Plaintiff has failed to allege a continuing violation.

Plaintiff also argues that his amended complaint filed on January 30, 2015 relates back to his original complaint filed on March 1, 2013. (D.I. 98 at 12). Under Rule 15(c)(1)(C) of the Federal Rules of Civil Procedure, for an amendment that names a new party to relate back to the original complaint: "(1) the claim in the amended pleading must arise out of the 'conduct, transaction, or occurrence' set forth in the original pleading; (2) within 120 days of institution of the action, the party to be brought in by amendment must have received 'such notice of the . . . action that the party will not be prejudiced in maintaining a defense on the merits'; and, (3) within 120 days of institution of the action, the party to be brought in by amendment must have known or should have known that, 'but for a mistake concerning the identity of the proper party,'

8

the action would have been brought against that party." *Arthur v. Maersk, Inc.*, 434 F.3d 196, 207 (3d Cir. 2006) (citing Fed. R. Civ. P. 15(c)).

Plaintiff's claims against CCS arise out of the May 16, 2012 incident—the same "conduct, transaction, or occurrence" that gave rise to the original complaint. Thus, the only two issues are whether, within 120 days of March 1, 2013, CCS: (1) received notice of the action; and (2) knew or should have known that the action would have been brought against it but for a mistake concerning its identity. Plaintiff concedes that he did not name CCS as a defendant until he filed his first amended complaint on January 30, 2015. (D.I. 153 at 3). CCS submitted a declaration stating, "The first time CCS became aware of any legal action filed by Mr. Biddle was in or around December 2014 when it was served with a third party subpoena from Plaintiff," and "CCS did not become aware of the claims against it until its registered agent was served with the Amended Complaint in February 2015." (D.I. 166 at 3). Plaintiff argues, however, that it is reasonable to infer that CCS was made aware of Plaintiff's original and amended *pro se* complaints before December 2014. (D.I. 153 at 3). Plaintiff argues that CCS was aware of Plaintiff's injuries because CCS employees treated Plaintiff on May 20, 2012, and because Plaintiff filed a "Sick Call Form" on June 12, 2012, requesting x-rays of his hands for "injuries suffered by staff when a seizur[e] occur[r]ed on 5-15-2012." (D.I. 140 ¶¶ 86–89). Neither of these instances provided CCS notice of Plaintiff's original or amended *pro se* complaint. Thus, CCS did not receive notice of Plaintiff's action within 120 days of the filing of the original complaint.

Even if CCS had received notice of Plaintiff's action within 120 days, it would not have expected to be a defendant. The original and amended *pro se* complaints did not allege any improper conduct by CCS employees and did not suggest that CCS failed to provide adequate

9

medical treatment, training, or policies. Further, Plaintiff made no indication in the original or amended *pro se* complaint that he was unaware of or mistaken as to CCS's identity. Plaintiff even noted that the medical professional on duty during the May 16, 2012 incident told the officers multiple times, "He's having a seizure, not fighting." (D.I. 2 at 5; D.I. 17 at 1). Thus, Plaintiff did not fail to include claims against CCS because he was mistaken about its identity. Therefore, Plaintiff's claims against CCS do not relate back to the original complaint.

Plaintiff argues that the two-year statute of limitations should have been tolled under the federal doctrine of equitable tolling. (D.I. 153 at 4). "Federal courts may toll statutes of limitations for federal laws where the plaintiff in some extraordinary way has been prevented from asserting his or her rights." *Lake v. Arnold*, 232 F.3d 360, 370 (3d Cir. 2000) (internal quotation marks omitted). "Equitable tolling stops the statute of limitations from running when the date on which the claim accrued has already passed." *Id.* "Equitable tolling can be applied to suits brought under the federal civil rights statutes when the state statute of limitations would otherwise frustrate federal policy . . . .'" *Id.* (citations omitted). "Equitable tolling is appropriate in three general scenarios: (1) where a defendant actively misleads a plaintiff with respect to her cause of action; (2) where the plaintiff has been prevented from asserting her claim as a result of other extraordinary circumstances; or (3) where the plaintiff asserts her claims in a timely manner but has done so in the wrong forum." *Id.* at 370 n.9.

Plaintiff argues that the two-year statute of limitations on his claims against CCS should have been tolled until he was represented by counsel. (D.I. 153 at 4). Plaintiff argues that his lack of access to records and the DOC's failure to give him a grievance hearing were "extraordinary circumstances." (*Id.*). I disagree. Plaintiff had enough information when he filed the original complaint to file a claim against CCS, but chose not to do so. CCS did not

10

actively mislead Plaintiff and Plaintiff did not assert his claims in the wrong forum. Thus, Plaintiff is not entitled to equitable tolling. Therefore, Counts V, VI, and VII against CCS are barred by Delaware's two-year statute of limitations.

## IV. CONCLUSION

For the reasons provided above, Supervisor Defendants' motion to dismiss Counts III and IV and CCS's motion to dismiss Counts V, VI, and VII are granted. Counts III, IV, V, VI, and VII are dismissed with prejudice. An appropriate order will be entered.